UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

In re

Thermaldyne, LLC,
    Debtor .

Case No. 22-10053
Chapter 7

FINDING OF FACT AND CONCLUSIONS OF LAW
RELATING TO SALE OF ASSETS AND RELATED RELIEF

Dwayne M. Murray ("Trustee"), the chapter 7 trustee for the bankruptcy estate of Thermaldyne, LLC (the "Estate"), filed an Emergency Motion for Entry of Orders (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief [P-16] (the "Sale Motion") seeking authority to sell assets of Thermaldyne, LLC (the "Debtor").

The court held a February 25, 2022 hearing on a motion to establish sale procedures that resulted in Order Establishing Bidding and Sale Procedures [P-40] (the "Bid Procedures Order"). Pursuant to the Bid Procedures Order, an auction was conducted at the offices of Stewart Robbins Brown & Altazan LLC on April 6, 2022 between two qualified bidders with Amlon Ventures, LLC ("Amlon") being declared the "Winning Bidder" with the highest and best bid of $7,000,000 and ESES LA, LLC ("ESES") being declared the "Back-Up Bidder" with the second highest and best bid of $6,900,000.

The hearing on approval of the bids and final order to consider the Sale Motion (the "Sale Hearing") was held April 13, 2022. Present were: (a) Paul Douglas Stewart, Jr., counsel for the Trustee; (b) J. Eric Lockridge, counsel for Amlon; (c) David Rubin, counsel for Regions Bank. The Trustee testified that the sale was extensively marketed by Green Wing Chemicals, LLC under the approved Plant Management Agreement and through a national website related to the industry.

The Trustee also testified that the bids received at the auction were the product of arms'-length negotiations with the bidders, and that neither bidder was affiliated with the Debtor or its affiliates.

At the conclusion of the hearing on the Sale Motion, and in light of (i) proper notice having been given as evidenced by the certificates of service entered on the docket of the record of this bankruptcy case; (ii) the testimony of Trustee Dwayne M. Murray; (iii) the testimony of Mark Wayne for Amlon; (iv) the stipulations of parties' counsel to the facts set forth in this document as represented by their signatures below; and (v) the arguments of counsel, the court for reasons rendered orally announced that it would grant the Sale Motion and sign an order approving the sale (the "Sale Order"). These findings of fact and conclusions of law ("Findings and Conclusions") supplement any oral findings and together with any oral findings and reasons announced in court, constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this case pursuant to Bankruptcy Rule 9014.

IT IS FOUND THAT:

1. The findings of fact and conclusions of law set forth in this document constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this case pursuant to Bankruptcy Rule 9014. If any of the following findings of fact constitute conclusions of law, they are adopted as such. If any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law stated by the court at the Sale Hearing are incorporated, to the extent they are not inconsistent with these Findings and Conclusions.

2. This court has jurisdiction and authority to hear and determine the request to approve the sale (the "Sale") and grant the other relief set forth in this order pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (N) and (O). Venue of this case in this district is proper under 28 U.S.C.

§§ 1408 and 1409. The predicates for the relief to be granted in the Sale Order are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 2002, 6004 and 6006; and all other applicable law.

3. The Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

4. The Winning Bidder has executed an asset purchase agreement (the "Amlon Purchase Agreement"). The Amlon Purchase Agreement provides for, among other things, the Winning Bidder to purchase certain assets of the Debtor that are set forth in the Amlon Purchase Agreement (the "Amlon Purchased Assets"), on the terms and conditions set forth in the Amlon Purchase Agreement.

5. The Backup Bidder has executed an asset purchase agreement (the "ESES Purchase Agreement"). The ESES Purchase Agreement provides for, among other things, the Backup Bidder to purchase certain assets of the Debtor that are set forth in the ESES Purchase Agreement (the "ESES Purchased Assets.") on the terms and conditions set forth in the ESES Purchase Agreement. The ESES Purchased Assets and the Amlon Purchased Assets collectively are referred to as the "Purchased Assets."

6. Sufficient notice of the Sale Motion, the Bid Procedures Order, and the Sale Hearing has been provided in accordance with Bankruptcy Rules 2002 and 6004(a), as evidenced by the Certificates of Service filed by the Trustee and entered on the docket of this case, showing service on all parties identified on the mailing matrix for this case and the parties who have consented to electronic noticing [P-22, P-43]. The Trustee testified that after conducting a Section 341 meeting and other investigation, he is not aware of any party entitled to notice that is not

included on the mailing matrix. This notice is sufficient for all purposes under the Bankruptcy Code, and no further notice of, or hearing on, the Sale Motion is required.

7. The Trustee and his professionals, agents and other representatives have complied in all respects with the Bid Procedures Order. Under the circumstances, the Trustee and his professionals, agents and other representatives have adequately and appropriately marketed the Purchased Assets. The Bid Procedures were duly noticed and conducted in a diligent, non-collusive, fair and good faith manner, and the procedures in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to do necessary and appropriate due diligence, qualify as a bidder, participate in the bidding process, and make a higher or otherwise better offer to purchase the Purchased Assets.

8. The Trustee and his professionals, agents and other representatives: (i) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets; and (ii) faithfully executed his duties in considering all offers and bids throughout the bidding process and in determining the Winning Bidder and the Back-Up Bidder for the Purchased Assets.

9. The relief requested in the Sale Motion and the Sale to the Winning Bidder (or Back-Up Bidder if applicable), including all bid protections afforded the designated stalking horse bidder, is a reasonable exercise of the Trustee's business judgment, complies with 11 U.S.C. §§ 105, 363 and 365, and is in the best interest of the Debtor, its estate and creditors, and all other parties-in-interest.

10. The Trustee has no connection with the Winning Bidder or Back-Up Bidder, and has dealt at arms' length with counsel for the Winning Bidder and Back-Up Bidder.

11. The Winning Bidder (or the Back-Up Bidder, if applicable) is a purchaser in good faith, as that term is used in the Bankruptcy Code, and is entitled to the protections of Bankruptcy Code section 363(m) with respect to the Sale. The Amlon Purchase Agreement and the ESES Purchase Agreement were negotiated and entered into in good faith, based upon arm's length negotiations and without collusion or fraud of any kind. The Winning Bidder and the Back-Up Bidder did not act in a collusive manner with each other or any other person. The bid of the Winning Bidder (or the Back-Up Bidder, if applicable) is fair, reasonable, and offers the highest and best offer available, and is in the best interest of the estate and its creditors.

12. A sale of the Purchased Assets other than one free and clear of all liens, claims, and interests (except those expressly assumed by the Winning Bidder (or Back-Up Bidder, if applicable) would yield substantially less value for the Estate than the Sale. Therefore, the Sale contemplated by the Amlon Purchase Agreement (or ESES Purchase Agreement, if applicable) is in the best interests of the Debtor, its Estate and creditors, and all other parties in interest.

13. The Sale Motion complies with Bankruptcy Code section 363(f). The Trustee obtained the consent of Regions Bank to the sale of the Purchased Assets to the Winning Bidder (or Back-Up Bidder, if applicable) under the terms set forth in the Amlon Purchase Agreement (or ESES Purchase Agreement, if applicable) and the Sale Motion. To the extent there are other liens or claims that could arguably affect the Purchased Assets, the holders of such liens or claims did not object to the terms of the Sale Motion and/or the Sale, which expressly provides that the Sale is to be free and clear of all liens, claims, and interests. The Trustee may sell the Purchased Assets free and clear of all liens, claims, and interests to the extent provided in the Amlon Purchase Agreement (or ESES Purchase Agreement, if applicable) because, with respect to each creditor asserting an interest, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-

(5) have been satisfied. Holders of interests who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented to the Sale Motion and Sale pursuant to Bankruptcy Code section 363(f)(2). The objections of holders of interests fall within one or more of the other subsections of section 363(f), and all those objections are overruled.

14. All objections to the relief requested in the Sale Motion that have not been withdrawn, waived or otherwise resolved are overruled.

15. No party in interest, including the Trustee, Winning Bidder and Back-Up Bidder, engaged in any conduct that would cause or permit the Amlon Purchase Agreement (or ESES Purchase Agreement, if applicable) or the consummation of the Sale to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n). The purchase price to be paid by the Winning Bidder (or the Back-Up Bidder, if applicable) for the Purchased Assets under the Amlon Purchase Agreement (or the ESES Purchase Agreement, if applicable), and the terms and conditions of those agreements constitute transfers for reasonably equivalent value and fair consideration; so the Sale may not be avoided under Bankruptcy Code section 363(n).

16. The Sale is in the best interests of the Debtor and its Estate, creditors, interest holders, and all other parties in interest.

17. Except as otherwise provided in the Amlon Purchase Agreement (or ESES Purchase Agreement, if applicable), any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier, contract counterparty or employee of the Debtor, shall be transferred to the Winning Bidder (or Back-Up Bidder, if applicable) free and clear of all liens, and shall be delivered to the Winning Bidder (or Back-Up Bidder, if applicable) at the closing.

18.     These Findings and Conclusions and the Sale Order (a) are effective as a determination that, upon the closing, except as the Sale Order expressly provides, all liens affecting the Purchased Assets prior to the closing have been unconditionally released, discharged and terminated in each case as to the Purchased Assets and (b) will authorize all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons or entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Winning Bidder (or Back-Up Bidder, if applicable) is the purchaser of the Purchased Assets free and clear of all liens except as the Amlon Purchase Agreement (or ESES Purchase Agreement, if applicable) expressly provide.

19.     All transactions and instruments contemplated under the terms of the Sale shall be specifically enforceable against and binding upon, and not subject to rejection or avoidance by, the Trustee, creditors of the Debtor, the Debtor's Estate, any successors of the Debtor, and/or any other parties in interest, including but not limited to any trustee appointed in any subsequent or converted case of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code.

20.     In the absence of a stay of the effectiveness of the Sale Order, if the Winning Bidder (or Back-Up Bidder, if applicable) and the Trustee consummate the transactions contemplated in the Amlon Purchase Agreement (or ESES Purchase Agreement, if applicable) at any time after the entry of the Sale Order, then with respect to the transactions approved and authorized by the Sale Order, the Winning Bidder (or Back-Up Bidder), as an arms'-length purchase in good faith within the meaning of Bankruptcy Code section 363(m), is entitled to all the protections of Section 363(m)

in the event the Sale Order or any authorization contained in that order is reversed or modified on appeal.

21. For purposes of 11 U.S.C. §363(m) and §363(n), the bids of the Successful Bidder and the Backup Bidder were arm's length, non-collusive bids and were not the subject of or controlled by any agreement among potential bidders.

22. The Sale was approved after a hearing properly and timely noticed. The Trustee provided notice of the Sale Motion, Bidding Procedures Order, and Sale Hearing to all parties who have consented to electronic noticing and all parties identified on the mailing matrix for this case, as evidenced by the Certificates of Service filed on the docket for the record of this case [P-22, P-43]. The Sale Hearing provided reasonable opportunity to all interested parties to object to the relief requested and to make higher and better offers for the Purchased Assets.

23. The court retains jurisdiction to hear and determine all matters arising from or related to the Sale, and the documents executed and delivered in connection with the Sale and Sale Order.

24. Good cause exists for waiving the fourteen-day stay under Bankruptcy Rule 6004(h).

Baton Rouge, Louisiana, April 14, 2022.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE